UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

2018 OCT -4 A 10: 24

DEBRA P. HACKETT. CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

VICTORIA PETERSON,

Plaintiff,

-VS-

CASE NO.: 2:18-CV-864-SRW

CREDIT ACCEPTANCE
CORPORATION.

Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, Plaintiff, Victoria Peterson, (hereinafter "Plaintiff") by and through the undersigned counsel, and sues Defendant, Credit Acceptance Corporation (hereinafter "Defendant"), and in support thereof respectfully alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. ("TCPA"). Plaintiff further alleges that Defendant committed an invasion of privacy as recognized by Alabama jurisprudence.

## INTRODUCTION

1.      The TCPA was enacted to prevent companies like  from invading American citizen's privacy and to prevent abusive "robo-calls."

2.      "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

3.      "Senator Hollings, the TCPA's sponsor, described these calls as 'the **\*1256** scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone

1

out of the wall." 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

4.      According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014." *Fact Sheet: Wheeler Proposal to Protect and Empower Consumers Against Unwanted Robocalls, Texts to Wireless Phones*, Federal Communications Commission, (May 27, 2015), https://apps.fcc.gov/edocs_public/attachmatch/DOC-333676A1.pdf.

## JURISDICTION AND VENUE

5.      Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

6.      Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). See *Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014).

7.      The alleged violations described herein occurred in Barbour County, Alabama. Accordingly, venue is appropriate with this Court under 28 U.S.C. §1391(b)(2) as it is the judicial district in which a substantial part of the events or omissions giving rise to this action occurred.

## FACTUAL ALLEGATIONS

8.      Plaintiff is a natural person, and citizen of the State of Alabama, residing in Barbour County.

9.      Plaintiff is a "consumer."

10.     Plaintiff is an "alleged debtor."

11.     Plaintiff is the "called party." See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

12.     Defendant is a corporation with its principal place of business located at 25505 West Twelve Mile Road, Southfield, Michigan 48034-8339, and which conducts business in the State of Alabama through its registered agent, Corporation Service Company, Inc. located at 641 South Lawrence Street, Montgomery, Alabama 36104.

13.     The debt that is the subject matter of this Complaint is a "consumer debt."

14.     Defendant attempted to collect an alleged debt from Plaintiff by this campaign of telephone calls.

15.     Upon receipt of the calls from Defendant, Plaintiff's caller ID identified the calls were being initiated from, but not limited to, the following phone numbers: (586) 461-4321, (313) 263-1173, (313) 263-1170, and (810) 272-5122, and when those numbers are called, a pre-recorded voice or agent answers and identifies the number as belonging to Credit Acceptance Corporation.

16.     Upon information and belief, some or all of the calls the Defendant made to Plaintiff's cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or

prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls"). Plaintiff will testify that she knew it was an autodialer because of the vast number of calls she received and because she heard a pause when she answered her phone before a voice came on the line and/or she received prerecorded messages from Defendant.

17.    Plaintiff is the subscriber, regular user and carrier of the cellular telephone number (334) *** - 8539 and was the called party and recipient of Defendant's calls.

18.    Defendant placed an exorbitant number of calls to Plaintiff's cellular telephone number (334) *** - 8539  in an attempt to collect on a motor vehicle loan.

19.    On several occasions over the last four (4) years Plaintiff instructed Defendant's agent(s) to stop calling her cellular telephone.

20.    In or about January of 2017, Plaintiff answered a call from Defendant to her aforementioned cellular telephone number, met with an automated message, held the line and was eventually connected to a live representative, and informed an agent/representative of Defendant that the calls to her cellular phone were harassing, and demanded that they cease calling her aforementioned cellular telephone number.

21.    During the aforementioned phone call with Defendant in or about January of 2017, Plaintiff unequivocally revoked any express consent Defendant had for placement of telephone calls to Plaintiff's aforementioned cellular telephone number by the use of an automatic telephone dialing system or a pre-recorded or artificial voice.

22.    Each subsequent call the Defendant made to the Plaintiff's aforementioned cellular telephone number was done so without the "express consent" of the Plaintiff.

23.    Each subsequent call the Defendant made to the Plaintiff's aforementioned cellular telephone number was knowing and willful.

4

24.     Additionally, on or about July 3, 2018, due to continued automated calls to her aforementioned cellular telephone number from the Defendant, Plaintiff again answered a call from Defendant, met with an extended pause, held the line and was eventually connected to a live representative, and informed the agent/representative of Defendant that she had previously informed them not to call her cellular telephone number, and again demanded that Defendant cease placing calls to her aforementioned cellular telephone number.

25.     Despite actual knowledge of their wrongdoing, the Defendant continued the campaign of abuse, calling the Plaintiff despite the Plaintiff revoking any express consent the Defendant may have had to call her aforementioned cellular telephone number.

26.     Defendant has placed approximately one hundred (100) calls to Plaintiff's aforementioned cellular telephone number. Due to the volume and time period over which she received automated calls, Plaintiff was not able to properly catalogue each and every call received from Defendant; thus, the exact number of calls will be established after a thorough review of Defendant's records.

27.     Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice to individuals just as it did to Plaintiff's cellular telephone in this case.

28.     Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice just as it did to Plaintiff's cellular telephone in this case, with no way for the consumer, Plaintiff, or , to remove the number.

29.     Defendant's corporate policy is structured so as to continue to call individuals like Plaintiff, despite these individuals explaining to they wish for the calls to stop.

5

30. Defendant has numerous other federal lawsuits pending against it alleging similar violations as stated in this Complaint.

31. Numerous complaints across the country have been filed against Defendant asserting that its automatic telephone dialing system continues to call despite requested to stop.

32. Defendant has had numerous complaints from consumers across the country against it asking to not be called; however, Defendant continues to call the consumers.

33. Defendant's corporate policy provided no means for Plaintiff to have her number removed from Defendant's call list.

34. Defendant has a corporate policy to harass and abuse individuals despite actual knowledge the called parties do not wish to be called.

35. Not a single call placed by Defendant to Plaintiff were placed for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

36. Defendant willfully and/or knowingly violated the TCPA with respect to Plaintiff.

37. From each and every call placed without consent by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of invasion of privacy and the intrusion upon her right of seclusion.

38. From each and every call without express consent placed by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of occupation of her cellular telephone line and cellular phone by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls while the phone was ringing from Defendant's calls.

39. From each and every call placed without express consent by Defendant to Plaintiff's cell phone, Plaintiff suffered the injury of unnecessary expenditure of her time. For

6

calls she answered, the time she spent on the call was unnecessary as she repeatedly asked for the calls to stop. Even for unanswered calls, Plaintiff had to waste time to unlock the phone and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

40. Each and every call placed without express consent by Defendant to Plaintiff's cell phone was an injury in the form of a nuisance and annoyance to Plaintiff. For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to waste time to unlock the phone and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

41. Each and every call placed without express consent by Defendant to Plaintiff's cell phone resulted in the injury of unnecessary expenditure of Plaintiff's cell phone's battery power.

42. Each and every call placed without express consent by Defendant to Plaintiff's cell phone where a voice message was left which occupied space in Plaintiff's phone or network.

43. Each and every call placed without express consent by Defendant to Plaintiff's cell phone resulted in the injury of a trespass to Plaintiff's chattel, namely her cellular phone and her cellular phone services.

44. As a result of the calls described above, Plaintiff suffered an invasion of privacy. Plaintiff was also affect in a personal and individualized way by stress, anxiety, nervousness, embarrassment, and aggravation.

7

## COUNT I
### (Violation of the TCPA)

45.    Plaintiff fully incorporates and realleges paragraphs one (1) through forty-four (44) as if fully set forth herein.

46.    Defendant willfully violated the TCPA with respect to Plaintiff, especially for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff notified Defendant that she wished for the calls to stop.

47.    Defendant repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff, VICTORIA PETERSON, respectfully demands a trial by jury on all issues so triable and judgment against Defendant CREDIT ACCEPTANCE CORPORATION for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

## COUNT II
### (Invasion of Privacy)

48.     Plaintiff fully incorporates and realleges paragraphs one (1) through forty-four (44) as if fully set forth herein.

49.     At all times relevant to this action Defendant is subject to and must abide by the laws of the State of Alabama, including Alabama common law.

50.     Alabama recognizes the tort "invasion of the right to privacy" since 1948. *Phillips v. Smalley*, 435 So.2d 705, 708 (Ala. 1983); *affirmed* 711 F.2d 1524 (11th Cir. 1983).

51.     Invasion of privacy, intrusion upon seclusion, and wrongful intrusion are all actionable under the Restatement (Second) of Torts § 652B. *Phillips v. Smalley*, 435 So.2d 705, 709 (Ala. 1983).

52.     Defendant has violated Plaintiff's right of privacy and intruded upon her right to seclusion by willfully communicating with the debtor or any member of his or her family with such frequency as can reasonably be expected to harass the debtor or his or her family.

53.     Defendant's tortious conduct has directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages, which is a recognized cause of action pursuant to Alabama jurisprudence.

9

**WHEREFORE,** Plaintiff VICTORIA PETERSON respectfully demands a trial by jury on all issues so triable and judgment against Defendant CREDIT ACCEPTANCE CORPORATION for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

Respectfully submitted,

*janelle neal*

Janelle Neal, Esq.
Florida Bar #: 774561
Morgan & Morgan, Tampa, P.A.
One Tampa City Center
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tele: (813) 223-5505
Fax: (813) 223-5402
JNeal@forthepeople.com ;
MMartinez@forthepeople.com
*Attorney for Plaintiff*